UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:23-cv-61053-Reid
[Consent Case]

| | |
|---|---|
| CASSANDRA STAFFORD, <br> BEAU DICKENSON, and <br> VINCENT CAGGIANO, on behalf of themselves, <br> and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTA RESTAURANT PARTNERS, LLC <br> d/b/a TGI FRIDAY'S, <br><br> Defendant. | Magistrate Judge: Hon. Lisette Reid |

**PLAINTIFF'S *AGREED* MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND……………………………………….…7

II. FINAL APPROVAL OF CLASS/COLLECTIVE SETTLEMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES……………………………………..….8

    A. Plaintiff Has Satisfied Rule 23 Notice Requirements…………..………………….8

    B. The Settlement is Fair, Reasonable, and Adequate.…………………………………..9

        i. Final Approval of the Settlement is Warranted Based on the Strength of Plaintiff's Case Compared to the Value of the Settlement ……………………………………………………………..10,11,12

        ii. Range of Possible Recovery………………………………………..12

        iii. Final Approval is Warranted in Light of Complexity, Length, and Expense of Further Litigation…………………………………………………..13

        iv. There is No Opposition to the Settlement……………………………….14

        v. The Stage of Proceedings and Discovery Completed Weigh in Favor of Final Approval of the Class and Collective Settlement..……………………………………………………………14,15

III. FINAL APPROVAL UNDER 29 U.S.C. § 216(b) IS ALSO WARRANTED…..15,16

IV. INDIVIDUAL PAYMENTS SHOULD BE APPROVED…………..………………16

V. THE REQUESTED ATTORNEY'S FEES AND COSTS SOUGHT BY CLASS COUNSEL ARE REASONABLE AND WARRANTED…………………………..16

    A. Percentage of the Fund Method of Awarding Fees is Appropriate…………………17
    B. Plaintiff's Request for 33% of Common Fund is Typical and Reasonable………….17
    C. Plaintiff's Request is Warranted by Benefit Conferred on the Class, the Results Obtained, and the Risks Taken by Class Counsel……………………….18

VI. DEFENDNAT COMPLIED WITH CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE REQUIREMENT AND THERE ARE NO OBJECTORS…………………19

VII. CONCLUSION…………………………………………………………………19

**TABLE OF CASES**

*Acevado v. Workfit Medical LLC*
    187 F.Supp.3d 370 (W.D.N.Y. 2016)………..…………………………………….15

*A.C.L.U. v. United States Gen. Servs. Admin.*
    235 F.Supp.2d 816 (N.D. Ill. 2002)……………………………………….….15

*American International Group, Inc. v. ACE INA Holdings, Inc.*
    2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012)……..…….…….……………10

*Armstrong v. Bd. of School Directors of City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)……………….…..……………………………...……..10

*Atkinson v. Wal-Mart Stores, Inc.*
    2011 WL 6846747 at *5 (M.D. Fla. 2011)……………………………………………13

*Beber, et. al. v. Branch Banking & Trust Co., et. al.*,
    S.D. Fla. Case No. 15-cv-23294, ECF No. 109 (S.D. Fla. 2017)…………………….13

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980) ………..……..…..………………………………………….18

*Braynen v. Nationstar Mortgage, LLC*
    2015 WL 6872519 (S.D. Fla. 2015)……………………………………………….…15

*EEOC v. Hiram Walker 7 Sons, Inc.*
    768 F.2d 884 (7th Cir. 1985)……..…………………………………….….……..11

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)…………………..…………………………………………….9

*Evans v. Jeff D.*
    475 U.S. 717 (1986)………………….…..……………………………………………17

*Freeman v. Total Security Management*
    2014 WL 4829480 (W.D. Wis. 2014) …..………………………………..…...14

*Garcia-Celestino v. Ruiz Harvesting, Inc.*
    280 F.R.D. 640 (M.D. Fla. 2012)………………………………………………..11

*Gaskill v. Gordon*
    160 F.3d 361 (7th Cir. 1998)………………………………………...…….18, 19

*Hispanics United of DuPage County v. Village of Addison, Ill.*
    988 F.Supp. 1130 (N.D. Ill. 1997)………………………………….……………10

*Houston v. URS Corp.*
 2009 WL 2474055 (E.D. Va. 2009) ……………………………………………………….16

*In re Continental Ill. Sec. Litig.*
 962 F.2d 566 (7th Cir. 1992)……………………..……………………………………….13,19

*In re Dairy Farmers*
 80 F.Supp.3d 838 (N.D. Ill. 2015)……………………………………………………….19

*In re Kentucky Grill Chicken Coupon Marketing & Sales Practices Litig.*
 2011 WL 5599129 (N.D. Ill. 2011)……………………..…………………………………18

*In re Mexico Money Transfer Litig.,*
 164 F.Supp.2d 1002 (N.D. Ill. 2000)………………………..………………………….....14

*In re Online DVD-Rental Antitrust Litig.*
 779 F.3d 934 (9th Cir. 2015)……………………………………………………………….15

*In re U.S. Oil & Gas Litig.*
 967 F.2d 489 (11th Cir. 1992)……………………………………………………………..10

*Isby v. Bayh*
 75 F.3d 1191 (7th Cir. 1996)……………………….……...................10,14

*Jairam v. Colourpop Cosmetics, LLC*
 2020 WL 5848620 at *5 (S.D. Fla. Oct. 1, 2020)…………………………………………10

*Kubiak v. S.W. Cowboy, Inc.*
 2014 WL 2625181 (M.D. Fla. 2014)……………………………………………………….11

*Lam v. BVN 16, LLC, et. al.*
 S.D. Fla. Case No. 1:23-cv-21620-CMA at ECF No. 53 (Dec. 18, 2023)………………17

*Lemus v. H&R Block Enters. LLC*
 2012 WL 3638550 (N.D. Cal. 2012)……………………………………………………….12

*Lopez v. Hayes Robertson Group, Inc.*
 2013 WL 10561294 (S.D. Fla. 2013)……………………………………………………….11

*Lynn's Food Stores, Inc. v. United States*
 679 F.2d 1354 (11th Cir. 1982)…………………………………………………………….15, 16

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*
 834 F.2d 677 (7th Cir. 1987)……………………..……………...………………………….13

*Marshall v. Holiday Magic, Inc.*
　　550 F.2d 1173 (9th Cir. 1977)……………………………………………………………..14

*Mesa v. Ag-Mart Produce, Inc.*
　　2008 WL 2790224 (M.D. Fla. 2008)……………………………………………………..11

*Meyenberg v. Exxon Mobil Corp.*
　　2006 U.S. Dist. LEXIS 97057 (S.D. Ill. 2006)…………..…………………………..18, 19

*Napoles-Arcila v. Pero Family Farms, LLC*
　　2009 WL 1585970 (S.D. Fla. 2009)……………………………………………………..11

*Newman v. Stein*
　　464 F.2d 689 (2nd Cir. 1972)………………………………..…....…………12

*Paredes v. Mansanto Co.*
　　2016 WL 1555649 (N.D. Ind. 2016)…………….…………………...……………16

*Poertner v. Gillette Co.,*
　　618 F. App'x 624 (11th Cir. 2015)………………………………………………….13

*Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*
　　390 U.S. 414 (1968)………………………………………………………..……13

*Ramah Navajo Chapter v. Babbitt*
　　50 F.Supp.2d 1091 (D.N.M.1999)………………………　…………………………...19

*Renton v. 5th Bite of the Apple, LLC*
　　S.D. Fla. Case No. 0:22-cv-62082-PMH at ECF No. 66 (Jan. 23, 2024)………………..17

*Rosario-Guerro v. Orange Blossom Harvesting*
　　265 F.R.D. 619 (M.D. Fla. 2010)………………………………………………………..11

*Rotuna v. W. Customer Mgmt. Grp. LLC*
　　2010 WL 2490989 (N.D. Ohio 2010)…………………………….………………...16

*Sanchez v. Roka Akor Chicago LLC*
　　2017 WL 1425837 (N.D. Ill. 2017)…………………………………….……………..18

*Segroughni v. Advantus Restaurant, Inc.*
　　M.D. Fla. Case No. 8:12-cv-02000-SDM-TBM…………………………………………13

*Silverman v. Motorola*
　　2012 U.S. Dist. LEXIS 63477 (N.D. Ill. 2012)…………..………………………………..18

*Starr v. Chicago Cut Steakhouse, LLC*
  N.D. Ill. Case No. 12-cv-4416, ECF No. 135, (May 13, 2015) ..…………….........12, 19

*Sullivan v. DB Invs., Inc.*
  667 F.3d 273 (3rd Cir. 2011)………………..…………………………………..15

*Swift v. BancorpSouth Bank*
  2016 WL 11529613 (N.D. Fla. 2016)………………………………………………18

*Sylvester v. CIGNA Corp.*
  369 F.Supp.2d 34 (D.Me. 2005)………..………………………………………..15

*Synfuel Techs., Inc. v. DHL Express (USA) Inc.,*
  463 F.3d 646 (7th Cir. 2006)…………...………………   ……………….........10,11

*Taubenfeld v. AON Corp.*
  415 F.3d 597 (7th Cir. 2005)…………………………………………………..18

*Teahl v. Lazy Flamingo, Inc.*
  2016 WL 4942067 (M.D. Fla. 2016)………………………………………….17

*West Virginia v. Chas. Pfizer & Co.*
  314 F.Supp. 710 (S.D.N.Y. 1970)……………………………………………...…11

*Williams v. MGM-Pathe Communications Co.*
  129 F.3d 1026 (9th Cir. 1997)……………………………………...………..17

*Williams v. Reckitt Benckiser, LLC*
  2021 WL 8129371 at *35 (S.D. Fla. Dec. 15, 2021)…………………………………12

*Williams-Green v. J. Alexander's Rest., Inc.*
  277 F.R.D. 374 (N.D. Ill. 2011)………………………………..…………..…18, 19

## **OTHER AUTHORITY**

**Rules**

*Fed. R. Civ. P. 23*…………………………………………………….…………8,10,17

**Statutes**

*29 U.S.C. § 216(b) ("the FLSA")*…………………………….……………………….. 15, 17

*Fla. Stat. § 448.110 ("the FMWA")*………………………...……………..…7,11,17,19

*Fla. Const. Art. X, § 24*…………………………………………….……………..16

I. **INTRODUCTION AND BACKGROUND**

On April 26, 2024, this Court granted preliminary approval[1] of the Class and Collective Action Settlement ("the Settlement") reached by the Parties in this wage and hour dispute arising under the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA"). *See* Amended Preliminary Approval Order [D.E. 85]. The Court conditionally certified the following Settlement Class under Rule 23:

> **All Servers ("WW") and Bartenders ("Bartender" and "CktlSrvr") who worked for TGI Friday's restaurant located at 80 SW 84th Ave. in Plantation, Florida, between June 1, 2018, to October 17, 2023.**

*See* D.E. 85.

The Court also conditionally certified the following Settlement Collective under Section 216(b) of the FLSA:

> **All Servers ("WW") and Bartenders ("Bartender" and "CktlSrvr") who worked for TGI Friday's restaurant located at 80 SW 84th Ave. in Plantation, Florida, between June 1, 2020, to October 17, 2023.**

*Id.*

Within its Preliminary Approval Order, the Court named Jordan Richards, Esq. ("Mr. Richards") of USA Employment Lawyers as Class Counsel and appointed Mr. Richards and his law firm to also facilitate the claims administration in this case. *See* Declaration of Jordan Richards, Esq. attached as **Ex. A**. The Parties have now completed the notice and claims process of the settlement and seek final approval. A total of fourteen (14) individuals have submitted claims forms, including a total of five (5) individuals who are also opting-in to the FLSA Collective. *See* Composite of FLSA Consent Forms (Contact Information Redacted) attached as **Ex. B**. This Court should grant final approval because the Class and Collective Action Settlement easily satisfies the

---

[1] On April 3, 2024, Defense Counsel notified Class Counsel of newly discovered Class Members, thus modifying the total amount of hours worked to include an additional 13,174.14 regular hours worked and an additional 51.35 hours of overtime worked. Following this development the Parties promptly notified the Court, and a hearing before Magistrate Judge Lisette M. Reid was scheduled on April 7, 2024. Subsequently, on April 26, 2024, Judge Reid issued the Amended Preliminary Approval Order. Defendant agreed to pay the same $.076 for each of the additional regular hours and the same $7.37 for each of the additional overtime hours. There were no other material changes to the settlement. This increases the total maximum settlement amount by $10,012.34 for regular hours and $378.50 for overtime hours. Accordingly, the total value of the settlement offer for the class and collective in light of the additional hours reported by Defendant is **$153,413.16.**

7

required class settlement standard under Rule 23 of the Federal Rules of Civil Procedure and fairness considerations under the FLSA. Notably, no objections to the Settlement were filed by class and collective members, and no individuals sought exclusion. Moreover, Defendant has complied with CAFA notice requirements. *See* **Ex. C**. The Settlement yields an outstanding result for the Class and Collective, and final approval of this Settlement is therefore appropriate because the Settlement is fair, adequate, and reasonable. Accordingly, Plaintiff respectfully requests that this Court enter the proposed Final Approval Order attached hereto as **Ex. D**.

## II. FINAL APPROVAL OF THE CLASS AND COLLECTIVE SETTLEMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES.

### a. Plaintiff has Satisfied the Rule 23 Notice Requirements.

The notice procedure set forth within the Class and Collective Action Settlement Agreement comports with the Federal Rules of Civil Procedure and due process. Fed. R. Civ. P. 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). In *Eisen,* the United States Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

Here, the Court appointed Class Counsel, Jordan Richards, Esq. of USA Employment Lawyers, to also perform duties as Settlement Claims Administrator. *See* **Ex. A**. The Settlement Claims Administrator has performed all of his obligations, and the Parties have complied with all terms of the Amended Preliminary Approval Order. *See* D.E. 85; **Ex. A**. On or about April 29, 2024, Defendant provided the undersigned firm with a data list containing the names and last known mailing addresses during the Class Period for each Class and/or Collective Action Members. *Id.* On May 10, 2024, the undersigned firm caused the Notice of Proposed Class Action Settlement and Claim Form ("Notice Packet") to be mailed via First Class U.S. Mail to forty-nine (49) total Class Members, including fourteen (14) Collective Members. *See* **Ex. A**, ¶¶ 24-27.

After the initial mailing, a total of thirteen (13) Notice Packets were returned to the undersigned firm as undeliverable. *Id.* at ¶ 25. On June 8, 2024, the undersigned firm enlisted the services of Prestige Process, a reputable process server, to perform skip traces on the returned

Notice Packets in an effort to obtain updated addresses for the purpose of re-mailing the Notice Packets. The Notice Packets were promptly remailed to those Settlement Class Members, via U.S. First Class Mail. On June 14 and 15, 2024, the undersigned firm again enlisted Prestige Process for the purpose of performing four (4) additional skip traces. Again, the Notice Packets were promptly remailed to two (2) Settlement Class Members for whom Prestige Process was able to provide new, updated addresses. Prestige Process was unable to find a better address for only two Class Members. By the end of the mailing period, a total of two (2) Notice Packets were deemed undeliverable. A total of forty-seven (47) Notice Packets were successfully mailed. This yields a greater than 95% success rate on providing notice.

A total of fourteen (14) individuals submitted accepted claims forms, which represents a participation rate of 29% of the 49 eligible Settlement Class Members. *Id.* at ¶ 15, 18, 26; **Ex B**. A total of five (5) individuals opted-in to the FLSA Settlement Collective out of the 14 eligible individuals, which represents a participation rate of more than 35%. *Id.* The Parties' efforts to effectuate notice to the Class sufficiently satisfies the requirements of Rule 23(c)(2)(B) and comports with due process.

### b. The Settlement is Fair, Reasonable, and Adequate.

Settlement of class action litigation is favored by federal courts, particularly in complex class actions. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits"); *see, also, Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); *American International Group, Inc. v. ACE INA Holdings, Inc.,* 2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." *See* Fed. R. Civ. P. 23(e)(1)(C); *Synfuel,* 463 F.3d at 652. Furthermore, a court should not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 315 (7th Cir. 1980). In making its determination, a court must consider the following factors: (1) the strength of plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653. Moreover, a court must view the settlement in its entirety, rather than focus on any individual component. *Isby,* 75 F.3d at 1199. Finally, a strong presumption

of fairness exists when the settlement is the result of extensive arms-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Illinois,* 988 F.Supp. 1130, 1149 n. 6 (N.D. Ill. 1997).

In the Eleventh Circuit, when reviewing a class settlement, "the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members receive as much from a settlement as they might have recovered from victory at trial." *See, e.g., Jairam v. Colourpop Cosmetics, LLC,* 2020 WL 5848620 at *5 (S.D. Fla. Oct. 1, 2020). The Eleventh Circuit has instructed district courts to consider several factors – often referred to as the *Bennett* factors. The *Bennett* factors include:

> (1) The likelihood of success at trial;
> (2) The range of possible recovery;
> (3) The point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4) The complexity, expense, and duration of litigation;
> (5) The substance and amount of opposition to the settlement; and
> (6) The stage of proceedings at which settlement was reached.

*See Bennett,* 737 F.2d at 986.

### i. Final Approval of the Settlement is Warranted Based on the Strength of Plaintiff's Case as Compared to the Value of the Settlement.

The most important consideration is the strength of the plaintiff's case compared to the value of the settlement. *Synfuel,* 463 F.3d at 653. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, the Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing plaintiff's claims. *Id.* Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181 (M.D. Fla. 2014) (certifying opt-our Rule 23 class for FMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); *Rosario-Guerro v. Orange Blossom Harvesting,* 265 F.R.D. 619 (M.D. Fla. 2010) (same); *Napoles-Arcila v. Pero*

*Family Farms, LLC,* 2009 WL 1585970 (S.D. Fla. 2009) (same); *Mesa v. Ag-Mart Produce, Inc.,* 2008 WL 2790224 (M.D. Fla. 2008) (same).

Had this litigation continued without reaching a full and final settlement, there were a myriad of possible outcomes including ones far less favorable to Plaintiff and the Class Members. Bona fide disputes exist as to whether Plaintiff and the Class Members were properly compensated in accordance with the FLSA and FMWA. Thus, as in any complex action, the Plaintiff generally faced uncertainties. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). Determining a "reasonable" settlement amount is never a simple mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement…" *Newman v. Stein,* 464 F.2d 689, 693 (2nd Cir. 1972).

In determining whether the settlement is fair in comparison to the potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988); *see, also, Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371 at *20 (S.D. Fla. 2021) (Goodman, M.J.). Courts regularly find settlements to be fair even where "plaintiffs have not received the optimal relief." *See, e.g., Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988).

After deduction of the expenses, fees, and consideration payment, the Settlement provides a net fund of approximately **$96,413.16** to be paid to Class and/or Collective Members who worked at Defendant's restaurant at 80 SW 84th Ave., Plantation, Florida 33324 during the Class Period. This settlement fund will be distributed by the undersigned firm in its role as the Settlement Administrator pursuant to a claims-made process. Each Server and/or Bartender who timely submitted a valid claims form will receive approximately $0.76 for each regular hour worked during June 1, 2018, through October 17, 2023 ("Class Period"). Further, each Server and Bartender who timely submitted a valid claims form to opt-in to the FLSA collective will receive approximately $7.37 for each overtime hour worked between June 1, 2020, through October 17, 2023. The Settlement Payment that each Class Member is eligible to receive is proportionate to the total number of hours worked by them during the Class Period. Accordingly, the settlement is an excellent result for participating Class Members. *See Starr, et. al. v. Chicago Cut Steakhouse,*

*LLC,* N.D. Ill. Case No. 12-cv-4416, ECF No. 135 (May 13, 2015) (granting preliminary approval of class action settlement for restaurant servers that provided a class fund of $50,000.00 for class consisting of 566 servers). Pursuant to the Settlement Agreement, the remaining funds not claimed will revert to Defendant. *See Williams v. Reckitt Benckiser, LLC,* 2021 WL 8129371 at *35 (S.D. Fla. Dec. 15, 2021); *Lemus v. H&R Block Enters. LLC,* 2012 WL 3638550 (N.D. Cal. 2012) (approving reversion); *Atkinson v. Wal-Mart Stores, Inc.,* 2011 WL 6846747 at *5 (M.D. Fla. 2011) (approving claims-made settlement with full reversion in class action case). Thus, the Class and Collective Settlement Agreement ensures that the Members, including Plaintiff and Opt-In Plaintiffs, will receive significant monetary relief that is distributed on an equitable basis. This supports a finding that the Settlement is fair, adequate, and reasonable.

### ii. Range of Possible Recovery

The second and third *Bennett* factors also weigh in favor of final settlement approval. The allocation formula provides a recovery of more than 25% of each Class Member's "best day in court" and is therefore a fair, adequate, and reasonable settlement for the class. *See, e.g., Williams,* 2021 WL 8129371 at *20 *citing Hall*, 2014 WL 7184039 at *6 ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment"); *see, also, Poertner v. Gillette Co.,* 618 F. App'x 624 (11th Cir. 2015); *Beber, et. al. v. Branch Banking & Trust Co., et. al.*, S.D. Fla. Case No. 15-cv-23294, ECF No. 109 (S.D. Fla. 2017) (approving class settlement with payment percentages of damages of 10%, 8%, and 5%); *In Re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (range 9% to 45% of damages was an "exemplary" result).[2] The relief obtained for the Class is reasonable under the circumstances. *See, e.g., Segroughni v. Advantus Restaurant, Inc.*, M.D. Fla. Case No. 8:12-cv-02000-SDM-TBM (granting final approval to class comprised of 87 restaurant servers where common fund yielded an average award of $2,294.12 for each class member). Further, the amounts available for each Collective Member exceeds 61% of their "best day in court." The Settlement in this case provides substantial monetary benefits now, without the time, difficulties, stress, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.

---

[2] Because each class member had the opportunity to receive at least 25% of their "best day in court" this recovery constitutes a more than 10% recovery and is therefore an "exemplary" result under prevailing case law. *See In Re Checking Account Overdraft Litig.*, 830 F.Supp.3d at 1346.

1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial").

### iii. Final Approval is Warranted in Light of Complexity, Length, and Expense of Further Litigation.

"Most class actions are inherently complex, and settlement avoids the ocsts, delays and multitude of other problems associated with them." *See In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000). Avoiding the delay and risk of protracted litigation is another reason courts approve settlements. *See, e.g.*, *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration of the litigation"); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977). Here, further litigation would require risk, time, and expense associated with trial and possible appeals. Trial of this action alone would consume several weeks of preparation and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time. As such, the costs of further litigation become considerable in terms of both time and money with uncertain results and with no guarantee that Defendant could satisfy any ultimate judgment obtained in this case (if any). Under these circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years into the future, are readily apparent. *In re Mexico Money Transfer Litig.,* 164 F. Supp.2d 1002, 1019 (N.D. Ill. 2000).

Where Class Counsel are qualified, courts heavily rely on their opinion that the settlement is fair, reasonable, and adequate, especially where discovery and settlement negotiations are thorough and extensive. *See Isby,* 75 F.3d at 1200. Here, Class Counsel, who is experienced and knowledgeable in wage and hour class action litigation, are intimately familiar with the strengths and weaknesses of this case. The Court preliminarily appointed Mr. Richards as Class Counsel in this case. *See* **Ex. A, ¶ 5-14.** Based on the extensive vetting of the legal and factual issues in the face of vigorous opposition by the Defendant, it is Class Counsel's judgment that the Settlement reached in this case is fair, reasonable, and adequate under all of the attendant circumstances. *Id.* Class Counsel reached his opinion based on his experience, and intimate knowledge of the facts and legal issues in this case, and a comprehensive analysis of the strengths, weaknesses and value of claims and defenses balanced against the risks, time, and costs and expense of further protracted litigation and possible appeals. *Id.*

Accordingly, the fourth *Bennett* factor weighs in favor of final settlement approval.

### iv. There is No Opposition to the Settlement.

Notably, not a single class member has objected to the settlement. The lack of objectors indicates strong support for the Settlement and favors a finding that it is "fair and reasonable." *See A.C.L.U. v. United States Gen. Servs. Admin.,* 235 F.Supp.2d 816, 819 (N.D. Ill. 2002); *In re Mexico Money Transfer Litig.,* 164 F.Supp.2d 1002, 1020-21 (N.D. Ill. 2000) (the fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlements… [is] strong circumstantial evidence favoring settlement").; *Freeman v. Total Security Management* No. 12 CV 461, 2014 WL 4829480 (W.D. Wis. Sept. 29, 2014) (concluding that the settlement, which had no objectors or excluders, was fair, reasonable, and adequate). Moreover, none of the Class Members opted-out of the Settlement, which further indicates that final approval of the Settlement is warranted. Furthermore, the 29% participation rate in this case significantly exceeds 19%, which is considered substantial in wage and hour class action settlements. *See, e.g., Braynen v. Nationstar Mortgage, LLC,* 2015 WL 6872519 at *15 (S.D. Fla. 2015) (*citing In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944-45 (9th Cir. 2015) (granting final approval where there was a less than 4% claims rate); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 329 n.60 (3rd Cir. 2011) (recognizing that claims rates "rarely" exceed 7% "even with the most extensive notice campaigns"); *Acevado v. Workfit Medical LLC,* 187 F.Supp.3d 370, 380 (W.D.N.Y. 2016) (finding that 21% participation rate in a wage and hour class settlement is a "high participation rate for a claims made settlement"); *Sylvester v. CIGNA Corp.,* 369 F.Supp.2d 34, 52 (D.Me. 2005) ("Claims made settlements regularly yield response rates of 10 percent or less").

### v. The Stage of Proceedings and Discovery Completed Weigh in Favor of Final Approval of the Class and Collective Settlement.

This complex wage and hour class action had been pending since June 2023 before it was settled in October 2023 at a court-supervised settlement conference before the Honorable Magistrate Judge Lisette M. Reid. The Parties rigorously litigated the claims brought by Plaintiff. During the course of the litigation and settlement conference, and even pre-suit, the Parties engaged in extensive legal research, factual investigation, and analysis. The Parties litigated a Motion to Dismiss at the outset of the case in addition to disputes arising from a thorough discovery process. *See* D.E. 28; 29. Class Counsel has spent many hours over the past year investigating the claims against Defendant in the face of considerable odds and against a skilled and formidable opponent. The stage of litigation has advanced to a state that the Class Counsel could fairly and

fully evaluate the merits of the case, potential damages, and the probable course of the litigation absent settlement. As a result, the Parties negotiated the Settlement with complete knowledge regarding the strengths and weaknesses of the case and the benefits of the Settlement.

### III. FINAL APPROVAL UNDER 29 U.S.C. § 216(b) IS ALSO WARRANTED.

Under the Fair Labor Standards Act ("FLSA"), employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over the FLSA provisions." *Lynn's Foods Stores v. United States*, 679 F.2d 1354, 1353-1355 (11th Cir. 1982) (court approval in FLSA cases is favored "to promote the policy of encouraging settlement of litigation"). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Paredes v. Mansanto Co.*, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016).

The Settlement Agreement's terms outlined above are fair and reasonable for the Parties. A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due. *Houston v. URS Corp.*, 2009 WL 2474055, at *9 (E.D. Va. Aug. 7, 2009). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id*. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

The Parties disagree as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, among other disputes, the parties disagree on Plaintiff's ability to prove liability (individually and on a class/collective basis), a willful violation of the FLSA, and the amount/extent/scope of damages, including any award of liquidated damages and/or civil penalties due to the members of the Settlement Class. Although both parties continue to believe in the merits of their respective claims and defenses, given the information learned

throughout discovery, the time and expense associated with continuing to litigate this matter, and the uncertainty of dispositive motion practice and trial, and any resulting appeals, the parties agree that a compromise is appropriate at this stage of the litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). Payments to Settlement Class Members are directly proportionate to amounts allegedly due to them under the described methodology, less amounts commensurate with the risk inherent in further litigation as discussed above. These amounts constitute a reasonable and adequate recovery, and the parties' evaluation of Defendant's actual timekeeping and payroll records and the risks of continued litigation.

## IV. INDIVIDUAL PAYMENTS SHOULD BE APPROVED

The Settlement Agreement provides for Individual Consideration to be paid to Plaintiffs Stafford, Dickenson, and Caggiano, in exchange for them signing a general release that is much broader than any release that will apply to the class and/or collective. Plaintiffs and their counsel request that Individual Consideration Payment to each of the named Plaintiffs in the amount of Seventeen Thousand Five Hundred Dollars ($17,500.00) be paid. This type of consideration payment has been recently approved by other Southern District of Florida courts, including some in the context of wage and hour litigation. *See, e.g., Baja, et. al. v. Costco Wholesale Corp.,* S.D. Fla. Case No. 0:21-cv-61210-AHS at ECF No. 56, n.1 (Dec. 20, 2022) (approving general release payment in class action settlement); *see, also, Renton v. 5th Bite of the Apple, LLC,* S.D. Fla. Case No. 0:22-cv-62082-PMH at ECF No. 66 (Jan. 23, 2024) (M.J. Hunt approving general release payment in wage and hour class action settlement); *Teahl v. Lazy Flamingo, Inc.*, 2016 WL 4942067 (M.D. Fla. 2016) (Approving additional payment to class representative in FMWA class action settlement from the common fund in exchange for class representative's execution of a general release); *Lam v. BVN 16, LLC, et. al.,* S.D. Fla. Case No. 1:23-cv-21620-CMA at ECF No. 53 (Dec. 18, 2023) (Altonaga, C.J.) (approving consideration payment to named plaintiff and early opt-in plaintiff in FLSA collective action settlement).

## V. THE REQUESTED ATTORNEY'S FEES AND COSTS SOUGHT BY CLASS COUNSEL ARE REASONABLE AND WARRANTED.

The FLSA, FMWA, and Rule 23 provide that reasonable attorney's fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b); Fla. Stat. § 448.110(c)(1); Fed. R. Civ. P. 23.

As set forth within the Agreed Motion for Preliminary Approval, the Plaintiff seeks reasonable attorney's fees and costs in the amount of $52,000.00, which is 33% of the Maximum Settlement Amount, and reimbursable costs in the amount of Five Thousand Dollars ($5,000.00), for a total of Fifty-Seven Thousand Dollars ($57,000.00). *See* **Ex. A**. When fee-shifting statutes such as the FLSA are involved, parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D.,* 475 U.S. 717, 733-34, 738 n.30 (1986); *see, also, Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997). In this case, the parties negotiated a settlement which caps Defendant's total obligation for court-approved litigation costs, expenses, and attorney's fees at one hundred fifty-three thousand four hundred thirteen dollars and sixteen cents ($153,413.16).

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In common fund cases, the Eleventh Circuit has held class counsel are awarded a percentage of the total fund generated through a class action settlement. *See, e.g., Swift v. BankcorpSouth Bank,* 2016 WL 11529613 at *14 (N.D. Fla. 2016) (approving 35% of fund for attorney's fees) *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

### a. Percentage of the Fund Method of Awarding Fees is Appropriate.

In the Eleventh Circuit, class counsel is awarded a percentage of the total fund generated for the class. *Swift v. BankcorpSouth Bank,* 2016 WL 11529613 at *14 (N.D. Fla. 2016) (approving 35% of fund for attorney's fees) *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Taubenfeld v. AON Corp.,* 415 F.3d 597, 599-600 (7th Cir. 2005) (agreeing). This is especially appropriate where the percentage accurately reflects the market. *In re Kentucky Grill Chicken Coupon Marketing & Sales Practices Litig.,* 2011 WL 5599129 at *11 (N.D. Ill. 2011). Indeed, the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Silverman v. Motorola,* 2012 U.S. Dist. LEXIS 63477 at *14 (N.D. Ill. 2012).

### b. Plaintiff's Request for 33% of Common Fund is Typical and Reasonable.

To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Swift v. BankcorpSouth Bank,* 2016 WL 11529613 at *14; *Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The

typical contingent fee is between 33 and 40 percent…"); *Meyenberg v. Exxon Mobil Corp.,* 2006 U.S. Dist. LEXIS 52962 at *5 (S.D. Ill. 2006) ("The Court is independently aware that 33 1/3% to 40% plus costs of litigation is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation"); *Williams-Green v. J. Alexander's Restaurant, Inc.,* 277 F.R.D. 374 (N.D. Ill. 2011) (Magistrate Judge Cole approving attorney's fees in the amount of 40% of the class fund in class action settlement in wage and hour case); *Sanchez v. Roka Akor Chicago LLC,* 2017 WL 1425837 at *6 (N.D. Ill. 2017) (approving 39.5% of common fund as attorney's fees in wage and hour class action settlement) *citing In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent"); *In re Dairy Farmers,* 80 F.Supp.3d 838, 845 (N.D. Ill. 2015) (in class actions, "usual range for contingent fees is between 33 and 50 percent").

Class Counsel's requested fee is 33% of the common fund, which is reasonable and in accordance with the fees awarded in the case law set forth above and is consistent with the standard contingency fee percentage in the legal marketplace for comparable cases. *See Gaskill,* 160 F.3d at 362; *Meyenberg,* 2006 U.S. Dist. LEXIS 52962 at *5; *Williams-Green,* 277 F.R.D. 374. In wage and hour class action litigation – like this case – fee awards between thirty-three and forty percent are traditional in common fund cases. *Id.* Accordingly, Plaintiff requests that the Court award Class Counsel attorney's fees and costs in the amount of 33% of the fund plus $5,000.00 in costs for a total amount of $57,000.00

### c. **Plaintiff's Request is Warranted by Benefit Conferred on the Class, the Results Obtained, and the Risks Taken by Class Counsel.**

Plaintiff's fee request is further warranted in light of the significant and immediate financial benefit to the class. Under the settlement, Servers and Bartenders who worked at the subject restaurant location will share in the $143,022.32 fund. This is an excellent result. Plaintiff and Opt-In Plaintiffs were not required to sign general releases to participate in the settlement; instead, their general releases was limited to wage claims only. *See Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class).

Additionally, Class Counsel assumed a substantial risk of non-payment given the difficult and complex issues of law and fact that required sophisticated analysis, briefing, and argument. All tasks were performed at a high level, without compensation and with the risk of no

18

compensation. The prosecution of this action consumed the attention and time of Class Counsel, often to the exclusion of other matters. Finally, Plaintiff's outstanding result serves the purpose of the FMWA and FLSA by vindicating rights these statutes were enacted to protect. Class Counsel obtained a recovery that provides $0.76 for each hour worked by Class Members and $7.37 for each overtime hour worked by Class Members based on data through the class period. The recovery obtained for these Class Members meets or exceeds results obtained in similar cases. *See Williams-Green, et. al.,* 277 F.R.D. 374 (N.D. Ill. 2011) (approving class settlement for servers); *Starr, et. al. v. Chicago Cut Steakhouse, LLC*, No. 12-cv-4416 (approving class settlement for servers where $50,000.00 covered payments made to 566 servers). Accordingly, based on the rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, and the uncertainty of recovery and the results obtained, Class Counsel is entitled to an award of reasonable attorney's fees and costs of 36% of the Settlement Fund.

## VI. **DEFENDANT COMPLIED WITH CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE REQUIREMENT AND THERE ARE NO OBJECTORS**

Although it is likely the Class Action Fairness Act ("CAFA") does not apply as the matter in controversy does not exceed $5,000,000.00 and the class does not exceed 100 people, *Juvera v. Salcido,* 2013 WL 6628039 at n.3 (D. Ariz. 2013), out of caution, on or about May 2, 2024, Defendant served notice as set forth by 29 U.S.C. § 1715. Adequate notice was provided to the U.S. Attorney General, and Attorneys General for the State of Florida and State of Georgia. *See* Declaration of Gail Holtzman, Esq. attached as **Ex. C**. By the date of the Final Approval Hearing, more than 90 days will have passed since notice was sent. There are no objectors. *See* **Ex. C**.

## VII. CONCLUSION

WHEREFORE, Plaintiffs, CASSANDRA STAFFORD, BEAU DICKENSON, and VINCENT CAGGIANO, respectfully request that this Court: (1) grant final approval of the Class and Collective Action Settlement Agreement; (2) find the Settlement fair, reasonable, adequate, and in the best interests of the Class and Collective; (3) approve Class Counsel's application for an award of attorney's fees and costs in the amount of $57,000.00; (4) dismiss this case, and release and bar Released Claims by Class Members who did not opt-out of the Settlement. Consistent therewith, the Parties also respectfully request that the Court enter the Proposed Order attached to this motion as **Ex. D**.

## CERTIFICATE OF CONFERRAL

Prior to the filing of this motion, the Parties conferred and agree to relief sought herein.

Respectfully submitted,

**USA EMPLOYMENT LAWYERS – JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33301
*Class Counsel*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
Jordan@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 29, 2024, he electronically served the forgoing **PLAINTIFF'S AGREED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF LAW** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST:

**ATLANTA RESTAURANT PARTNERS, LLC**
Gail Golman Holtzman, Esq.
Denise Bleau, Esq.
Jake Bacarri, Esq.
Taylor English Duma LLP
5550 West Executive Drive, Suite 240 Box 10
Tampa, Florida 33609
Ph: (689) 348-5596
E-mail: gholtzman@taylorenglish.com
E-mail: dbleau@taylorenglish.com
*Counsel for Defendant*